The opinion of the court was delivered by
DeBlanc, J.
These consolidated suits were brought by owners of .drays, hacks, carriages, floats, carts and vehicles, to enjoin the City of New Orleans from enforcing an ordinance, adopted on the éth of
*829 December, 1877, and which was to go into effect from and after the 1st of January, 1878.
In substance, the enjoined ordinance provides that — besides the license which is to be obtained by any owner or driver of a vehicle kept for hire — they shall pay, for a pair of license plates to be attached to the vehicle, charges or fees which vary from five to twenty dollars.
These plates, which are intended to readily and conveniently identify the vehicles, cost twenty cents a pair ; and — under the ordinance — must be taken from the City at from eight to one hundred and fifty times what they cost.
By the 11th paragraph of section 12 of the City charter, its Council is empowered “ to regulate the proper government of carts, drays, “ carriages, omnibuses, and other vehicles of every description, freight, “ locomotive, passenger and street cars, which run in the streets, and “ within the limits of the City, and to require that the owners of said “ vehicles shall take a license, and to fix the fees and charges of ail “ vehicles kept for hire.”
Acts of 1870, Ex. s. p. 86.
Plaintiffs denounce the charge thus sought to be recovered, as one which is — not only arbritrary and unequal .in amount — but, besides, one which is not authorized by any law ; and — in his printed argument — the counsel who represents the City, contends that said charge was imposed by the Council, in the legitimate exercise of its police, and not its taxing power.
License laws — according to Cooley — are of two kinds: “ those which require the payment of a license fee by way of raising a revenue, and are therefore the exercise of the power of taxation ; and those which are mere police regulations, and which require the payment of such license fee as will cover the expense of the license, and of enforcing the regulation.”
Cooley, on Const. Law, p. 586.
At page 201 of the same book — speaking of the exaction of a license fee with a view to revenue, he says: “the charter must plainly show an intent to confer that power, or the municipal corporation can not assume it.”
It is evident, as maintained by plaintiffs’ counsel, that the authority conferred on the Council “ to fx the fees and charges of all vehicles Icept for hire,” is widely different from that which it had exercised. That clause merely empowers the Council — in order to guard against and prevent extortion — to fix the compensation which the owners and drivers of vehicles shall be entitled to claim for their use. The plain terms of that plain clause, repel and exclude the bold pretension that the City could or can sell, and compel its inhabitants to purchase — at from *830 five to twenty dollars, that which, at any time and nearly everywhere, they could procure for twenty cents.
The city may — for purposes of identification and inspection- — require that plates be attached to vehicles kept for hire, and prescribe the form of those plates ; but it can not — under the pretext of securing that distinctive mark — impose, on an already taxed and legitimate industry, an exaction which — by whatever name it may be called — is but a disguised and additional license.
Under the 20th paragraph of section 12 of its charter, the City is empowered to levy, impose and collect a license tax upon all persons pursuing a calling, etc. That done, and as to those who pursue but one calling, its power — in that respect — is exhausted, and — thereafter—it can, under no provision of its charter, impose a license charge on the drays, wagons, carts, floats and vehicles belonging to those who have paid for the privilege of using them in their callings.
“ The right to exact that license, is yet more evident — we are told— when we reflect that expensive pavements are laid and the streets formed, solely for the purpose of affording a passage to vehicles” — but, is this done for the exclusive benefit of the owners and drivers of those vehicles ? Is it not for the advantage of factors, merchants and financiers that drays and floats go from the unloading steamers to the presses, thence to the vessels? Is it not for the convenience of others, that hired carriages are seen constantly moving in every direction, towards atheatre or a graveyard ? As their owners and drivers, those who use them contribute to the inevitable injury done to the pavements, and should — in equal proportion — contribute to their repairs.
“ The constitution requires that a license tax, as well as a tax on property, shall be equal and uniform. To be equal and uniform, the tax imposed must be the same upon all who engage in the particular profession or calling taxed,” without regard — as in this instance — to the number of wheels of the vehicles, or the number of horses by which they are drawn. Whether by the State or by the City, but one license can be imposed upon those who pursue but one occupation. 30 A. 1094; 28 A. 102; 23 A. 449, 663; 22 A. 440; 20 A. 373; 10 A; 56; 11 A. 739. Const. 1868, art. 118.
The vehicles and horses of plaintiffs have been assessed and taxed in proportion to their value. The tax thns levied has been paid by them. To pursue their occupation, they are disposed and ready to take out and to pay a license tax, one which will assist in defraying — not only the cost of the license itself — but, generally, all the expenses incurred by the city in carrying out the provisions of its charter. Th'eir tender fills the measure of the only license which — either under the constitution or the laws — can justly be exacted from them. They do not belong to a class *831 which, in the interest of the State or the City, should be taxed out of existence.
The license charge or fee claimed from them is unreasonable and illegal, exorbitant and unconstitutional.
It is — therefore—ordered, adjudged and decreed that the judgment appealed from is affirmed with costs.
Rehearing refused.